**MONROE SAND & GRAVEL CO., Inc., et al. v. SANDERS.**

**SANDERS v. MONROE SAND & GRAVEL CO., Inc., et al.**

No. 7652.

Circuit Court of Appeals, Fifth Circuit.

Aug. 29, 1935.

Rehearing Denied Sept. 27, 1935.

Geo. Gunby and Allan Sholars, both of Monroe, La., for appellants Monroe Sand & Gravel Co., Inc., and others.

S. W. Plauche, of Lake Charles, La., for appellee Sanders.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

John W. Sanders brought this suit against the Monroe Sand & Gravel Company, hereafter called the gravel company, and the Royal Indemnity Company, to recover on a contract entered into between him and the gravel company, for the faithful performance of which a bond had been given with the Indemnity Company as surety.

The pleadings are voluminous, but we need not state them. The jury was waived in writing, and the case submitted to the judge. The following facts appear from the record:

The gravel company was the owner of a lease for the mining and excavation of gravel, sand, and ballast on some 300 acres of land in Ouachita parish, La., and entered into a contract with Sanders to operate the property, under conditions and terms stated in the contract. The material provisions of the contract were these: It was entered into on June 28, 1934, to continue in force and effect for six months from that date, with the privilege to Sanders of renewing it under the same terms for three years additional, on giving written notice to the gravel company at least thirty days before the expiration of the contract. Sanders agreed to mine and deliver to the gravel company 510 yards of bank run gravel and 198 yards of washed or screened gravel each day for at least 24 days in each calendar month, during the life of the contract and the gravel company agreed to furnish orders for this amount of gravel and to furnish railroad cars for loading it. At the end of each month, if Sanders had failed to deliver the minimum yardage, he was to forfeit to the gravel company 40 cents per yard for the shortage, said amount being for liquidated damages. The gravel company agreed that if it should fail to furnish orders or cars for the minimum amount of gravel it, in turn, would pay Sanders 40 cents per yard for the difference. It may be noted that while Sanders' obligation to pay for gravel not actually delivered was treated as liquidated damages, the same provision was not inserted as to payment by the gravel company.

The gravel company owned an extensive plant for the mining of gravel which was located on the property and this was turned over to Sanders for the term of the contract, to be used by him in doing the work. He was not obligated to furnish any equipment of his own. Sanders agreed to keep the equipment in repair at his own expense and return it intact at the termination of the contract in the same condition, less usual wear and tear, but he was not liable for such material as was

necessary to replace machinery or parts becoming unfit for use by reason of natural wear and tear. The contract contained the following clause: "This contract is personal to both parties, and neither party shall assign or otherwise transfer the same or any part thereof or any of the instrumentalities necessary for its consummation without the written consent of the other."

On November 7, 1924, a charter was executed before a notary in Ouachita parish, incorporating the Sanders Construction Company, Inc. The incorporators were J. W. Sanders, his wife and son and two others. The act of incorporation was properly recorded in Ouachita parish. A copy of the act, with the name changed to Sanders Contracting Company, was filed with the secretary of state of Louisiana and a certificate of incorporation was issued in that name. On November 7, 1924, the day before the notarial act incorporating the Sanders Construction Company was passed, Sanders executed a notarial act selling the contract of the gravel company to the Sanders Construction Company Inc., for the price of $10,000. No money was exchanged, but in payment Sanders received 170 shares of stock of the corporation. In some way he acquired or controls all the other shares of stock. After this no change was made in the management or operation of the property. Sanders continued to mine and deliver the gravel, rendering bills in his own name and receiving checks to his own order in payment. He did not notify the gravel company of the assignment, although he testified that Stephenson, president of the gravel company, knew about it a few days after it was made. Some stationery was printed and books were opened in the name of the Sanders Contracting Company. Sanders opened a bank account in the name of the contracting company and used that name in doing business with others, but not with the gravel company.

• In the course of doing the work certain parts of the equipment turned over to Sanders·by the gravel company became worn out and useless. For some eight or nine months the gravel company furnished or paid Sanders for such parts and then declined to continue to do so. After that Sanders notified the gravel company by letter requesting that certain parts be replaced. This was refused. Sanders then supplied the needed parts and charged them to the gravel company.

A claim of Sanders was for damages arising from the failure of the gravel company to furnish orders and cars for the minimum amount of gravel between October 21 and November 20, 1925. It was shown that a washout occurred on the main line of the railroad that delivered cars to the pit, which was not repaired before six days and between November 5 and 12, 1925, cars could not be delivered. The shortage was the subject of negotiations between the parties, and there were reciprocal charges and credits. It was not clearly shown what the amount of shortage was. It was not shown that Sanders actually mined the gravel and was ready to deliver it, or that he suffered any monetary damage in connection therewith.

While Sanders sought to recover on a number of different claims, by voluntary nonsuit the claims were reduced to reimbursement for worn out parts supplied and for damages for failure to take the minimum amount of gravel during the period between October 21 and November 20, 1925. Both plaintiff and defendants moved for judgment. The court made no special findings of fact and entered a general judgment in favor of Sanders against the gravel company and the surety company for the amount expended for replacement of parts, but rejected his claim for damages.

From his opinion in the record it appears that the court reached the conclusion on the law that the transfer of the contract amounted to a breach on the part of Sanders which prevented recovery of damages for short delivery. It would seem the District Court did not consider the evidence on this point. The District Court was of the opinion that Sanders was entitled to recovery on a quantum meruit for the parts supplied, since the work was carried on by the corporation. No reasons were given for entering judgment against the surety company.

It is unnecessary to review the assignments of error in detail.

█ Sanders contends that there was no breach of contract. The gravel company contends that, having sued on a contract, Sanders was not entitled to recover on a quantum meruit. The surety company contends that it was released by the breach of contract by Sanders and judgment should not have been entered against it. The jury having been waived, we are at liberty to disregard the conclusions of law

of the District Court and render judgment on the undisputed facts. Bank of Waterproof v. Fidelity & Deposit Co. (C. C. A.) 299 F. 478.

■■ Under the law of Louisiana the attempted incorporation of Sanders was an absolute nullity, and under the facts here appearing, resulted in neither a corporation de facto nor a corporation de jure. La. Act No. 267 of 1914; Provident Bank & Trust Co. v. Saxon, 116 La. 408, 40 So. 778. Nor was there in fact any transfer. Sanders continued to operate the property as he had always done. The corporation was a mere shell without officers or directors, and it amounted to nothing more than a name under which Sanders conducted his personal business. The attempted transfer, not consummated, did not amount to a breach of the contract.

It was clearly within the contemplation of the parties that Sanders should conduct the operation of the mining and delivery of the gravel with the equipment turned over to him. His right to the use of this equipment formed part of the consideration moving to him. It was the duty of the gravel company to replace any worn out parts, not to be classified merely as repairs. That was the construction of the contract by the gravel company at first. Sanders did not sue on a quantum meruit. He sued on his contract and he was entitled to recover on it. Although based upon a different conception of the law, the judgment of the District Court in this respect was right.

■■ We do not find sufficient evidence in the record to prove the claim for damages because of the alleged failure of the gravel company to furnish orders and cars for the minimum amount of gravel during the period between October 21 and November 20, 1925. The stipulation for paying 40 cents per yard was a penalty and not enforceable as liquidated damages. Although based on different conclusions of law, the judgment of the District Court as to this item was also right.

The record presents no reversible error.

Affirmed.

BRYAN, Circuit Judge, participated in the hearing and decision of this cause, but died before the opinion was prepared and filed.